IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BETH ELAINE ALLUISI,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 3:16-cv-01685-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

Plaintiff Beth Elaine Alluisi brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner granted plaintiff's application for Supplemental Security Income ("SSI") but denied plaintiff's application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

In June 2012, plaintiff applied for DIB. She alleged disability beginning November 1, 2007, due to a bone/blood disorder, chronic anemia, myelodysplastic syndrome, arthritis, depression, hypothyroidism, inner ear imbalance, sleep apnea, vertigo, and asthma. Plaintiff's DIB application was denied initially and upon reconsideration, with the reconsideration denial dated June 2013. On October 18, 2013, plaintiff applied for SSI. The Social Security Agency accelerated the SSI application to the hearing level, and both applications were addressed in an October 21, 2014 hearing before an ALJ. At the hearing, plaintiff testified and was represented by an attorney. A vocational expert also testified. On December 19, 2014, the ALJ issued a partially favorable written decision. The ALJ granted plaintiff's SSI application, finding her disabled as of her October 18, 2013, application date. But the ALJ denied plaintiff's DIB application, finding she was not disabled on December 31, 2011, her date last insured ("DLI") for Title II purposes. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one

interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date of November 1, 2007. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments as of the alleged onset date: myelodysplastic syndrome, anemia, pancytopenia, splenomegaly, obesity, degenerative joint disease of the hip and knee, sleep apnea, and hypothyroidism. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). The ALJ further found that as of the SSI application date in October 2013, plaintiff had additional severe impairments: carpal tunnel syndrome, non-Hodgkin's lymphoma, hypogammaglobulin, tremor, polymyalgia rheumatic, and headaches.

At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner

acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ assessed two different residual functional capacities. 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). In the first, for the period prior to October 18, 2013, the ALJ found that plaintiff could perform light work with a number of additional limitations. In the second, for the period beginning on October 18, 2013, the ALJ imposed even more limitations, including a requirement that plaintiff take three additional fifteen-minute breaks per work day. At step four, the ALJ concluded that, prior to October 18, 2013, plaintiff could perform her past work as a telephone solicitor or semiconductor assembler. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); *id.* §§ 416.920(a)(4)(iv), (f). But, beginning on October 18, 2013, plaintiff was unable to perform any of her past work. Proceeding to step five for the post-October 18, 2013 period only, the ALJ found that a finding of "disabled" was directed by the Medical-Vocational Rules.

The ALJ denied plaintiff's application for DIB because she "was not under a disability within the meaning of the . . . Act at any time through December 31, 2011," plaintiff's DLI. Tr. 34 (citations omitted). However, the ALJ found plaintiff disabled as of her SSI application date and granted her application for SSI.

## DISCUSSION

The government concedes that the ALJ's decision contains legal errors and must be remanded. The parties disagree, however, over whether the remand should be for further proceedings or for an immediate award of benefits.

The Ninth Circuit has developed a three-step process to determine whether a Social Security appeal should be remanded for further proceedings or for an immediate award of benefits. At step one, the reviewing court must determine whether the ALJ made a harmful legal

error, such as failing to provide legally sufficient reasons for rejecting evidence. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). At step two, the court reviews the record as a whole to determine whether the record is fully developed and free from conflicts, with all essential factual issues resolved. *Id.* Step two is the most important step because "the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citation omitted). If the record is fully developed, the court proceeds to step three and considers "whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (citations omitted). If the ALJ would be required to make such a finding, the court has discretion to remand for an immediate award of benefits. *Id.* Even when all three steps are satisfied, however, the court may remand for further proceedings if the record as a whole "creates serious doubt as to whether a claimant is, in fact, disabled within the meaning of the . . . Act." *Id.* at 408 (citation and internal quotation marks omitted).

Here, the parties agree that the ALJ erred by inferring an onset date of October 18, 2013, without the assistance of a medical expert. Agency guidance explains that in Social Security cases, "onset date is critical" because "it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits." SSR 83-20, *available at* 1983 WL 31249, *1 (1983). The guidance specifies that when the evidence in the record does not conclusively establish an onset date, the onset date "must be inferred" with the assistance "of a medical advisor[.]" *Id.* at *3. The Ninth Circuit has held that this directive is mandatory; when the medical evidence is "not definite" concerning onset date, it is error for an ALJ to infer an onset date without calling a medical expert. *Armstrong v. Comm'r Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).

Page 5 – OPINION AND ORDER

It appears that the ALJ here thought his conclusion that plaintiff had not proved disability prior to her DLI rendered it unnecessary to fix a precise onset date. In his decision, the ALJ explained:

> For the Title II claim, the date last insured was December 31, 2011. The evidence does not support a finding of disability on or before the date last insured. For the Title XVI claim, the protective filing date was October 18, 2013. The undersigned has considered the entire medical record. However, a claimant is not eligible for Title XVI payments before the protective filing date. Therefore, this section will focus on the period before the date last insured.

Tr. 27. Reading between the lines, the ALJ apparently believed it was necessary to fix a precise onset date only if he concluded that onset fell somewhere between the DLI and the SSI application date.

That approach is squarely foreclosed by *Armstrong*. In *Armstrong*, like in this case, the ALJ had granted the plaintiff's application for SSI as of the application date but had denied the application for DIB based on a finding the claimant was not disabled prior to his DLI. 160 F.3d at 589. The Commissioner argued that it was not necessary for the ALJ to pinpoint a precise onset date because the ALJ had determined the plaintiff was not disabled prior to the DLI. The Ninth Circuit rejected that argument because it would "eliminat[e]" SSR 83-20's requirement that the ALJ "create a record which forms a basis" for the onset date. *Id.* at 590. Accordingly, as both parties acknowledge, step one of the credit-as-true test is satisfied.

Proceeding to step two, remand for further proceedings is the proper course. I cannot conclude the record is fully developed. As a preliminary matter and as noted by the ALJ, there is very little medical evidence relating to the earliest years in the asserted period of disability. Furthermore, plaintiff herself asserted that she stopped working November 1, 2007 because she was laid off and that her conditions actually became disabling on August 1, 2011. And even if plaintiff were asserting disability beginning in 2011 rather than in 2007, substantial ambiguity

Page 6 – OPINION AND ORDER

would remain. In a statement dated January 8, 2014, treating physician Alison Mitchell, M.D., opined that plaintiff was unable to work due to her health problems. But those problems have not been stable; according to Dr. Mitchell's statement, plaintiff's health "has declined significantly over the past few years." Tr. 989. Although Dr. Mitchell stated that plaintiff's impairments have limited her since before her DLI, she never offers an opinion regarding precisely when plaintiff's impairments rendered her unable to work. Similarly, treating physician Rebecca Orwoll, M.D., unequivocally opined that plaintiff was incapable of working in two statements, dated August 2012 and May 2014. Dr. Orwoll also stated that plaintiff was diagnosed with myelodysplastic syndrome prior to plaintiff's DLI. But Dr. Orwoll, like Dr. Mitchell, never offered her opinion regarding when plaintiff's impairments crossed the line from limiting to disabling. The record requires further development regarding the progression of plaintiff's impairments.

Step three of the credit-as-true analysis also supports remanding for further proceedings. Crediting Dr. Mitchell's and Dr. Orwoll's opinions as true would not establish that plaintiff was disabled before the DLI. It is clear from the opinions that plaintiff had severe impairments and resultant limitations before the DLI, but it is not clear that those limitations prevented her from working prior to that date. Indeed, the record suggests that this case will be a close call with respect to whether plaintiff became disabled before or after the DLI. The ALJ reasonably found there to be tension between plaintiff's ability to maintain a near-perfect grade point average while taking a full community college course load and plaintiff's allegation that she was disabled before her DLI. Plaintiff testified that, in her final months of study, she was so exhausted she "couldn't have a social life with school" and "just barely managed" to keep up, suggesting that she may have become disabled right around the time of her DLI. Tr. 51. In sum, the record as a

whole underscores the progressive nature of plaintiff's conditions and the need for a medical expert to assist the ALJ in pinpointing an onset date.

On remand, the ALJ shall conduct a *de novo* hearing regarding plaintiff's eligibility for DIB. The ALJ shall call a medical expert to assist in ascertaining an onset date. The ALJ shall also reconsider the weight to be given to plaintiff's subjective symptom testimony and to the opinions of plaintiff's treating physicians. In view of the fully developed record, the ALJ shall reevaluate plaintiff's severe impairments at step two and consider whether plaintiff should be found disabled based on a listing at step three. The ALJ is specifically directed to consider Dr. Mitchell's opinion that plaintiff's impairments are the *equivalent* of Listing 7.02 despite the fact that she does not *meet* that listing. If plaintiff does not meet or equal a listing at step three, the ALJ shall reformulate plaintiff's RFC and consider anew whether plaintiff is able to perform past relevant work or other work existing in the national economy.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 6th day of September 2017.

Ann Aiken
United States District Judge